# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CHARLIE EAKLE,**                     :
                                       :
    **Plaintiff**              : CIVIL NO. 4:CV-04-1526
                                       :
  **v.**                             : **Judge Jones**
                                       :
**FRANKLIN TENNIS,**                   :
 **Superintendent, et al.,**          :
                                       :
    **Defendants**            :

## ORDER

### September 15, 2005

Charles Eakle ("Plaintiff" or "Eakle"), an inmate presently confined in the Smithfield State Correctional Institution, in Huntingdon, Pennsylvania, filed this civil rights action filed pursuant to 42 U.S.C. § 1983. His complaint centers around several alleged constitutional violations which occurred while he was confined in the Rockview State Correctional Institution. Specifically, Plaintiff alleges that he found a piece of metal in his food on April 13, 2004, and that he was threatened by a corrections officer when he attempted to report the incident. He also alleges that several corrections officers used "shockguns" and lasers to torture him on several occasions. Named as Defendants are the following employees and entities of SCI-Rockview: Program Review Committee

("PRC"); Superintendent Franklin Tennis; Deputy Superintendent Gregory Gaertner, Ph.D.; Deputy Superintendent Joel Dickson; Former Deputy Superintendent Anthony Biviano; Program Manager Ray Coffman; Corrections Counselor Michael Knapp; Lieutenant Dale Walker; and Corrections Officers Timothy Watson, and Timothy Gensamer. Presently pending before the Court is the Defendants' Motion for Summary Judgment ("the Motion"). (Rec. Doc. 17).[1]  The Motion is fully briefed and is ripe for disposition. Defendants assert entitlement to the entry of summary judgment in their favor because Eakle failed to exhaust available administrative remedies. For the reasons set forth below, the motion will be granted.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "[T]his standard provides that the mere existence of some

---

1. Defendants originally filed the Motion as a Motion to Dismiss. However, because matters outside of the record would be considered in deciding the Motion, by Order dated January 25, 2005, Defendants' Motion to Dismiss was converted into a Motion for Summary Judgment. (Rec. Doc. 24).

2

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>See</u> <u>Anderson</u>, 477 U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>See</u> <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. <u>See</u> <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party

seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e)[2] to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. See Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some

---

2. Eakle was provided with copies of M.D. Pa. Local Rules 7.1 through 7.8, Local Rule 26.10, and Federal Rule of Civil Procedure 56(e).  In relevant part, Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Local Rule 7.4 provides in relevant part:

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

(See doc. 6, Standing Practice Order).

4

metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**STATEMENT OF FACTS**

On April 13, 2004, while housed in the Restricted Housing Unit ("RHU") at SCI-Rockview, Plaintiff claims that Officer Hagg placed a piece of metal in the food on Plaintiff's lunch tray.(Rec. Doc. 1 at 2). Further, Plaintiff alleges that while picking up the lunch trays, Officer Hagg threatened Plaintiff, stating that if he "did not stop acting like a female, he would kill [Plaintiff]." (Rec. Doc. 1 at 2).

On April 24, 2004, Plaintiff spoke with Lt. Vance about the incident. Plaintiff claims that Lt. Vance confiscated the piece of metal and gave Plaintiff a confiscation receipt, claiming that the piece of metal would be put in the evidence safe in the security office. (Rec. Doc. 1 at 2).

On May 10, 2004, Plaintiff wrote a letter the Superintendent, concerning the April 13, 2004, incident. He claims to have received no response. (Rec. Doc. 1 at Ex. 1).

On June 4, 2004, Plaintiff sent a letter to the members of the SCI-Rockview PRC, informing them of "all the times Officer Hagg and other officers had taken shockguns, mirrors, and lazorlights" to try and "force [him] to change [his] feminine ways."(Rec. Doc. 1 at Ex. 1). On June 10, 2004, Plaintiff spoke with two members of the PRC, who informed him that they would investigate. (Rec. Doc. 1 at Ex. 1) Plaintiff, was subsequently released from the RHU, and transferred to SCI-Smithfield on June 17, 2004. (Rec. Doc. 1 at Ex. 1).

On June 17, 2004, upon his arrival at SCI-Smithfield, Plaintiff filed Grievance No. 88108, regarding the food contamination incident, the use of stun guns and incidents relating to mail tampering, which occurred while he was housed in the SCI-Rockview RHU. (Rec. Doc. 20 at Ex. 1-A). Attached to his grievance were copies of letters that were allegedly sent to the SCI-Rockview Superintendent and the PRC. (Rec. Doc. 20 at Ex. 1-A).

On June 29, 2004, the SCI-Smithfield Grievance Coordinator returned Plaintiff's grievance to him. (Rec. Doc. 20 at Ex. 1-B). Although it was clear from the grievance that

6

the alleged food contamination incident occurred sometime before May 10, 2004, it was impossible to tell when the remaining incidents occurred. (Rec. Doc. 20 at Ex. 1, Aff. of Jeffrey Rackovan, SCI-Rockview Grievance Coordinator, at ¶ 6). Thus, the Grievance Coordinator returned Eakle's grievance to him due to: (1) his failure to submit the grievance within fifteen (15) calendar days of the food contamination incident; and (2) his failure to state the dates on which the mail tampering and excessive force events occurred. (Aff. of Jeffrey Rackovan, at ¶ 6). Eakle did not resubmit the grievance with supporting dates or appeal the decision of the Grievance Coordinator to the Superintendent, or the Secretary's Office of Inmate Grievances and Appeals. (Aff. of Jeffrey Rackovan, at ¶ 6).

On July 14, 2004, Plaintiff filed the instant action in which he seeks compensatory and punitive damages and to "prevent [defendants] from any other forms of harassment. (Rec. Doc. 1 at 3).

## **DISCUSSION**

Defendants contend that Eakle's failure to exhaust available administrative remedies entitles them to an entry of summary judgment in their favor. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Exhaustion requires completion of the entire administrative process. See Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843-44 (E.D. Pa. 2000). If a prisoner fails to follow the required administrative procedures, including meeting deadlines, the inmate's action cannot be maintained. See Buckner v. Bussanich, No. 1:CV-00-1594, slip op. at 6 (M.D. Pa. April 3, 2001) (Caldwell, J.)("an administrative remedy is not made unavailable simply because a prisoner failed to timely exercise his rights under the procedure. Otherwise, the prisoner could avoid the exhaustion requirement simply by refusing to pursue administrative remedies").

The Pennsylvania DOC has established procedures for the filing of complaints. First, the Pennsylvania DOC Consolidated Inmate Review System provides for three levels of administrative review of inmate grievances: the initial grievance submitted to the Facility Grievance Coordinator, an intermediate level of appeal to the Facility Manager, and a final level of appeal to the Secretary's Office of Inmate Grievances and Appeals. (See Doc. 20 at Ex. 2-A, Commonwealth of Pennsylvania, Department of Corrections,

8

Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI). See also Booth v. Churner, 206 F.3d 289, 293 n. 2 (3d Cir.2000) (outlining the grievance review process).

The grievance procedure requires a prisoner to submit a grievance for initial review within fifteen working days after the event upon which the grievance is based. (See Rec. Doc. 20 at Ex. 2-A, DC-ADM 804 § VI, Part A(1)(h)). The inmate should state the facts upon which he is entitled to relief. (See Rec. Doc. 20 at Ex. 2-A, DC-ADM 804 § VI, Part A(1)(g))("The inmate shall include a statement of facts relevant to the claim. . . The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally."). Indeed, in Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir.2004), the Third Circuit recognized the significance in identifying the relevant facts and persons in order to bring a subsequent federal lawsuit:

> On this matter, the text is mandatory, or nearly so. . . To the extent that Brown's identity is a "fact [] relevant to the claim." – and it is– it was mandatory for Spruill to include it. To the extent that Brown was a "person [] who may have information" or someone with whom Spruill made "attempts to resolve the matter informally" – and he was – Spruill was required to identify Brown if practicable.

Spruill, 372 F.3d at 234. Moreover, the exhaustion requirement of § 1997e(a) is not

satisfied simply "whenever there is no further process available to the inmate within the grievance system (which would happen if, say, an inmate fails to file an administrative appeal)...." Spruill, 372 F.3d at 227-28.  Rather, § 1997e(a) requires that an inmate "avail[ ] himself of every process at every turn (which would require all appeals to be timely pursued, etc.)." Id.

In applying the above analysis to the factual background surrounding this action, it is readily apparent that Plaintiff has procedurally defaulted on his claims and summary judgment will be granted in favor of the Defendants.  Plaintiff's grievance was returned to him because Plaintiff's claim regarding the metal in his food was patently untimely and it was unclear when the alleged incidents of abuse occurred. (Rec. Doc. 20 at Ex. 1-B). The record discloses that Eakle failed to either resubmit a grievance with the necessary information, or timely file an appeal from the Grievance Coordinator's decision.  Thus, Eakle has sustained a procedural default under the applicable DOC regulations.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). See Spruill, 372 F.3d at 231.  In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025

10

(emphasis added). Eakle offers no justification for his failure to resubmit his grievance, or file an appeal therefrom, within the deadline set by regulation. Thus, Eakle is now foreclosed from litigating this claim in this Court.

In <u>Spruill</u>, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In <u>Pusey v. Belanger</u>, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied <u>Spruill</u> to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In <u>Berry v. Kerik</u>, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in <u>Pozo</u>, stating that "[a] prison procedure that is procedurally

11

barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support dismissal of this action for Eakle's failure to pursue his administrative remedies with respect to his claims. Accordingly, Defendants' motion for summary judgment will be granted.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motion (doc. 17) is **GRANTED**. Judgment is hereby entered in favor of Defendants and against the Plaintiff.

2. Plaintiff's Motion for Summary Judgment (doc. 26) is **DENIED**.

3. Plaintiff's Motion to Amend[3] (doc. 27) is **DENIED**.

4. The Clerk of Court is directed to **CLOSE** this case.

5. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

---

3. On February 4, 2005, Plaintiff filed a "Motion to Amend", in which he seeks to add Defendants and claims that are wholly unrelated to the instant action. Although the addition of new defendants is permitted by Fed.R.Civ.15(d), it is only to be allowed when a supplemental complaint is not "a new cause of action but merely part of the same old cause of action." Griffin v. County Sch.Bd of Prince Edward Cty, 377 U.S. 218, 226 (1964). Plaintiff's new claims arise out of events which occurred subsequent to Plaintiff's transfer from SCI-Rockview to SCI-Smithfield on June 17, 2004, while all claims against the already served Defendants relate to events before that date. Thus, Plaintiff's "amendment" constitutes a "new cause of action" involving persons who are strangers to the existing action. Such a new cause of action would be more appropriately filed as a new complaint.

s/ John E. Jones III
John E. Jones III
United States District Judge